IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD A. HYSONG | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ENCORE ENERGY | : | |
| PARTNERS LP, et al. | : | NO. 11-781 |

MEMORANDUM

Dalzell, J.                                   November 10, 2011

On September 6, 2011, plaintiff Donald A. Hysong, a

holder of limited partnership units in Encore Energy Partners

L.P. (the "Partnership"), filed a putative class action complaint

alleging violations of sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. §§ 78n(a), t(a),

arising from the defendants' issuance of an allegedly misleading

Form S-4 Registration Statement ("Registration Statement") under

the Securities Act of 1933 that defendants filed with the

Securities and Exchange Commission ("SEC") on September 2, 2011.

Pl.'s Compl. ¶¶ 48-61.

Plaintiff names ten defendants, including: (1) the

Partnership itself, a publicly traded Delaware master limited

partnership; (2) Vanguard Natural Resources, LLC ("Vanguard"), a

publicly traded Delaware limited liability company; and (3)

Encore Energy Partners GP LLC ("Encore GP"), a Delaware limited

───────────────

Sitting by designation pursuant to 28 U.S.C. §
292(b).

liability company and a wholly-owned subsidiary of Vanguard and
also the general partner of the Partnership responsible for its
management and operation.

        In addition to those three entities, plaintiff also
names seven individuals: (4) Scott W. Smith, the President, Chief
Executive Officer, and member of the Board of Directors of both
Encore GP and Vanguard; (5) Richard A. Robert, the Executive
Vice-President, Chief Financial Officer, and a Director of both
Encore GP and Vanguard; (6) Douglas Pence, the Senior Vice-
President of Operations and a Director of Encore GP and Senior
Vice-President of Engineering of Vanguard; (7) W. Timothy Hauss,
who is the Director of Encore GP and the Operations Manager at
Vanguard; (8) David Baggett, a Director of Encore GP and the
Chairman of the Audit Committee and a member of the Conflicts
Committee of the Encore GP Board; (9) John E. Jackson, a Director
of Encore GP; and (10) Martin G. White, a Director of Encore GP
and member of the Audit and Conflict Committees of the Encore GP
Board.  Pl.'s Compl. ¶¶ 7-22.

        A few days after plaintiff filed his complaint, he
moved for expedited discovery, which we denied on September 16,
2011.  On September 29, 2011, plaintiff filed a motion for
preliminary injunction to enjoin a then-not-yet-scheduled

                            2

unitholder vote. Plaintiff resurrected his motion for expedited discovery. We granted his request for expedited discovery and set a briefing and hearing schedule. On the same day, defendants filed a motion to transfer this case to the Southern District of Texas, Houston Division, and defendants eventually responded to that motion.

On October 5, 2011, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The next day, defendants filed a notice of an automatic stay of discovery under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). On October 7, 2011, we stayed the proceedings pending the issuance of an Order granting plaintiff's motion to lift the stay or denying defendants' motion to dismiss. Plaintiff filed a motion to lift the stay on October 11, 2011, and defendants responded thereto. We denied the motion to lift the stay on October 18, 2011. Six days later, plaintiff filed his response in opposition to the motion to dismiss and the defendants filed their reply.

For the reasons set forth below, we will grant defendants' motion to dismiss.

---

Amendment No. 2 to the Form S-4 Registration Statement, filed with the SEC on September 30, 2011, sets November 14, 2011 as the date of the unitholders' special meeting to vote on the Proposed Transaction.

When we consider a motion to dismiss under Rule
12(b)(6), we must "'accept all factual allegations in the
complaint as true and give the pleader the benefit of all
reasonable inferences that can be fairly drawn therefrom.'"
Ordonez v. Yost, 289 F. App'x 553, 554 (3d Cir. 2008) (quoting
Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In the
course of our inquiry, we may "'consider only allegations in the
complaint, exhibits attached to the complaint, matters of public
record, and documents that form the basis of a claim,'" Brown v.
Daniels, 128 F. App'x 910, 913 (3d Cir. 2005) (quoting Lum v.
Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a
document forms the basis of a claim if it is "integral to or
explicitly relied upon in the complaint." In re Burlington Coat
Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997))
(emphasis and internal quotation marks omitted).

Plaintiff objects to Vanguard's efforts to acquire all
of the outstanding publicly-held Partnership units through a
unit-for-unit exchange at a ratio of 0.75 VNR common units per
ENP common unit (the "Proposed Transaction").  Pl.'s Compl. ¶¶ 1,
31, 35. On July 11, 2011, the Proposed Transaction was valued at
about $544.8 million.  Id. ¶ 1.

4

Plaintiff alleges that the consideration offered to the Partnership's public unitholders is "unfair and inadequate because, among other things, the intrinsic value of [the Partnership's] common units is materially in excess of the amount offered for those securities in the Proposed Transaction, given the Company's financial performance and prospects for future growth and earnings."  Id. ¶ 36.  Plaintiff contends that defendants have imposed "onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a fait'accompli [sic] and ensure that no competing offers will emerge for the Company."  Id. ¶¶ 37-38.

> Plaintiff also claims that the defendants:
>
> filed with the SEC a materially misleading and incomplete Registration Statement, which serves as the proxy for the imminent [Partnership] unitholder meeting at which [the Partnership's] unitholders will be asked to vote on the Proposed Transaction.  The Registration Statement recommends that [the Partnership] unitholders vote in favor of the Proposed Transaction [and it] omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Partnership and omits material facts and information . . . necessary to make the statements contained therein not false and misleading. . . . [These omissions/misrepresentations] render[] unitholders unable to cast an informed vote on the Proposed Transaction.

Id. ¶ 39.

Plaintiff points to several examples of omitted information which, if disclosed, "would significantly alter the totality of information available for consideration by the average [Partnership] unitholder." Id. ¶ 40. He also claims that the unitholders' reliance upon the inadequate Registration Statement would cause them irreparable harm. Id.

Plaintiff identifies two categories of omitted facts as items of information that are necessary to enable shareholders to evaluate and properly assess the credibility of the various financial analyses described in the Registration Statement: (1) "information regarding the sales process leading up to the Proposed Transaction including the reasonable efforts (or lack thereof) to auction the Partnership prior to entry into the Merger Agreement and what strategic alternatives are available to the Partnership, besides this sale," id. ¶ 41; and (2) underlying methodologies, projections, key inputs and multiples relied upon and observed by Jefferies & Company, Inc. ("Jefferies"), the Partnership's financial advisor, and RBC Capital Markets, LLC ("RBC"), Vanguard's financial advisor, in connection with the Proposed Transaction. Id. ¶¶ 42-43. Plaintiff specifically cites the lack of disclosure of "comparative public companies analysis," "comparative transactions analysis," the "dividend discount model," and the

6

"discounted cash flow analysis," as actionable omissions. Id. ¶
42.

Because of their alleged materiality, plaintiff seeks
the disclosure of the fees (and fee terms) that Jefferies stands
to earn for its involvement in the Proposed Transaction, id. ¶
44, in addition to the "unlevered free cash flows or even the key
inputs necessary to reach free cash flows" at the heart of
Jefferies and RBC's 2011-2015 financial projections. Id. ¶ 45.
Plaintiff asserts that all of this information, taken together,
is "necessary for [the Partnership's] unitholders to cast an
informed vote on the Proposed Transaction." Id. ¶ 46.

Plaintiff's complaint asserts two counts against the
defendants: (1) violations of section 14(a) of the 1934 Act,
Pl.'s Compl. ¶¶ 48-52; and (2) violations of section 20(a) of the
1934 Act, id. ¶¶ 53-61.

The Supreme Court has explained that "only a complaint
that states a plausible claim for relief survives a motion to
dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to
engage in a "context-specific" inquiry that "requires [it] to
draw on its judicial experience and common sense." Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1950 (2009). Under this standard, a

7

pleading may not simply offer "labels and conclusions," Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
129 S. Ct. at 1949. Rather, "[f]actual allegations must be
enough to raise a right to relief above the speculative level,"
Twombly, 550 U.S. at 555, and there must be "more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 129
S. Ct. at 1949. Essentially, a plaintiff must provide "enough
facts to raise a reasonable expectation that discovery will
reveal evidence of the necessary element." Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks
omitted). However, "the defendant bears the burden of showing
that no claim has been presented." Hedges v. United States, 404
F.3d 744, 750 (3d Cir. 2005).

Since a claim arising under section 20(a) is viable
only if the defendants commit "a primary violation of the
securities laws," In re Suprema Specialties, Inc. Sec. Litig.,
438 F.3d 256, 284 (3d Cir. 2006), and the section 14(a) claim is
the "primary violation" alleged in the complaint, Pl.'s Compl. ¶
61, we will first examine the section 14(a) claim.

8

Defendants assert that "[p]laintiff has failed to identify a single statement in the preliminary proxy that he claims to be misleading. The Complaint identifies supposedly omitted information that Plaintiff claims should have been included, but nowhere does he allege that any of the actual statements in the proxy would be shown to be false or misleading by the omitted information, as is required." Def.'s Mot. to Dismiss 15 (footnote added). Defendants cite <u>Ash v. Brunswick Corp.</u>, 405 F. Supp. 234, 245 (D. Del. 1975) (Steel, S.J.), which holds that "[o]missions constitute violations of [Section 14(a)] only if they are both material and make other statements false or misleading."

_____

Defendants argue that because plaintiff's complaint is premised on statements in a <u>preliminary proxy</u> that was not sent to unitholders, plaintiff cannot allege that defendants have "solicited" any proxies as is required under Rule 14a-9. In support of this proposition, they cite cases from the Western District of Texas. Because we decide this case based on other grounds, we do not reach this question. Nevertheless, we note an opinion from our District in which Judge Caleb Wright held, placing his trust in strong "Hand(s)," that a communication to shareholders "may constitute a proxy solicitation, even if it does not contain an express request for a proxy, if it is part of a continuous plan intended to end in solicitation and to prepare the way for success." <u>Shamrock Holdings, Inc. v. Polaroid Corp.</u>, 709 F. Supp 1311, 1327 (D. Del. 1989) (internal quotation marks omitted) (citing <u>SEC v. Okin</u>, 132 F.2d 784, 786 (2d Cir. 1943) (Learned Hand, J.)); <u>see also</u> 69 Am. Jur. 2d <u>Securities Regulation</u> § 612 & n.1 (current through Nov. 2011) ("Definition of solicitation -- Continuous plan of solicitation").

9

Plaintiff's eighteen-page response only obliquely responds to this argument. Pl.'s Resp. Mot. to Dismiss 5-6. Plaintiff asserts that "[c]ourts have consistently held that the existence of a materially false or misleading statement or material omission is sufficient, in and of itself, to plead a cause of action under Section 14(a)." Id. (emphasis added). Plaintiff supports his position by supplying a list of citations without bothering to append explanatory parentheticals to help explain their relevance. Id. at 6. Plaintiff does not cite or distinguish Ash or any other case that defendants rely on in support of these particular arguments. Compare Def.'s Mot. To Dismiss 14-15 with Pl.'s Resp. Mot. to Dismiss 1-18.

Our Court of Appeals has never explicitly adopted Ash's reasoning, and while we find Ash's formulation of the Rule helpful, we will elaborate upon the reasoning advanced to date in its support. As a result, we start with a rehearsal of the elements needed to allege a section 14(a) claim that Rule 14a-9 implements.

---

The lone exception is Telltabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), which plaintiff cites only to develop the motion to dismiss standard and not the substantive requirements of a section 14(a) claim.

Our Court of Appeals has explained that, "[t]o prevail on a § 14(a) claim [for a violation of Rule 14a-9], a plaintiff

_____

Section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), provides in pertinent part:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78/ of this title.

SEC Rule 14a-9, 17 C.F.R. 240.14a-9(a), provides in pertinent part:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, [1] containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which [2] omits to state any material fact necessary in order to make the statements therein not false or misleading or [3] [which omits to state any material fact] necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

Plaintiff here relies only on the first two prongs of Rule 14a-9
(continued...)

11

must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 228 (3d Cir. 2007) (emphasis added) (quoting Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004)).   The Supreme Court has held that a misstatement or "omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (emphasis added).

Rule 14a-9's "materially misleading omission" (or the "materially omitted facts rendering a proxy statement misleading") requirement is comprised of two discrete elements: (1) the omission must be "material", and (2) the omission must render some statement included in the proxy solicitation "false or misleading".   See Tracinda Corp., 502 F.3d at 230-33.   Rule 14a-9, by virtue of its plain language, is wholly consistent with

_____

(...continued)
and although he rests primarily on prong 2, he also advances fleeting arguments under prong 1.   Since plaintiff does not allege any claims arising under prong 3, we will ignore it.

12

this conclusion. The distinction between the "materiality" and
"misrepresentation" elements in Rule 14a-9 leads us to conclude
that to adequately plead a "materially misleading omission" one
must, in accordance with Rule 8(a), allege an omission of a
"material fact" that makes other statements in the proxy "false
or misleading".

To be sure, an omission by itself cannot be false or
misleading, but it can leave unsaid something that is required to
prevent another statement from being false or misleading. Logic
dictates that before one can determine if "something" is false or
misleading, that "something" must be identified. Four analytical
pillars lead us to this conclusion: (1) our Court of Appeals's
reasoning in Tracinda Corp. v. DaimlerChrysler that teases apart
the "materiality" and "misleading" elements in a section 14(a)
claim arising under the first prong of Rule 14a-9, (2) Seinfeld
v. Becherer's unexplained and yet-to-be applied reasoning adopted
from the Second Circuit, (3) Judge Steel's reasoning in Ash v.
Brunswick Corp. that supplies us with an easy-to-apply rule, and
(4) scholarly commentary on the question.

Our Court of Appeals has often expounded on the
contours of "materially false or misleading statements" (or

13

"material, affirmative statements rendering a proxy solicitation false or misleading"). Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212 (3d Cir. 2007), is but one such instance. The Court analyzed prong one of Rule 14a-9(a) pertaining to an affirmatively offered, misleading statement, and reviewed the district court's entry of judgment in favor of the defendant on plaintiff's section 14(a) claim. After a thirteen-day bench trial, the district court, sitting as finder of fact, held that the defendant did not make any false or misleading written statements under Rule 14a-9 when it used the term "merger of equals" in a solicitation. Tracinda Corp., 502 F.3d at 229. The district court held that the failure to prove any false or misleading statement was, by itself, fatal to plaintiff's section 14(a) claim. Id.

Our Court of Appeals affirmed the judgment in favor of the defendant, thus disposing of plaintiff's section 14(a) claim and holding that the district court's "no misrepresentation" finding of fact was "not clearly erroneous." Id. at 232. The Court noted that it "need not reach . . . the proper legal standards for determining materiality and causation[,]" because

---

The district court nevertheless advanced a secondary basis for its decision along materiality grounds.

the absence of a misrepresentation was sufficiently fatal to the section 14 claim. Id. at 230.

Thus, Tracinda's narrowest holding teaches that, in the context of a section 14(a) claim arising under the first prong of Rule 14a-9, our Court of Appeals expects plaintiffs alleging a claim to (1) point to a specific statement in the proxy solicitation that can be identified as false or misleading, and (2) tease apart the "materiality" and "misleading" requirements of the Rule because each is a necessary condition to a claim arising under section 14 as implemented by Rule 14a-9. See id. at 230-33.

Thus, our Court of Appeals's broader holding in Tracinda informs the independent significance of the "materiality" and "misleading" inquiries under all three of Rule 14a-9's prongs. Tracinda in this way helps us to construe the meaning of "materially misleading omissions" arising under prong two of Rule 14a-9.

_____

Our Court of Appeals has also noted that the "'omission of information from a proxy statement will violate [§ 14(a) and Rule 14a-9] if either [i] the SEC regulations specifically require disclosure of the omitted information in a proxy

15

statement, or [ii] <u>the omission makes other statements in the</u>
<u>proxy statement materially false or misleading</u>.'" <u>Seinfeld v.</u>
<u>Becherer</u>, 461 F.3d 365, 369 (3d Cir. 2006) (alterations in
original except for addition of Roman numerals) (emphasis added)
(quoting <u>Resnik v. Swartz</u>, 303 F.3d 147, 151 (2d Cir. 2002)); <u>see</u>
<u>also</u> <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083, 1097
(1991) ("liability under § 14(a) must rest not only on [1]
deceptiveness but [2] materiality as well"). Our Court of
Appeals has not yet had occasion to apply or explain the second
prong which requires the omission to "make" other "material
statements" in the proxy "false or misleading".

Although the meaning of Rule 14a-9's "materially
misleading omissions" has not received widespread attention in
the 1934 Act jurisprudence, Judge Steel in <u>Ash</u>, 405 F. Supp. at
245, succinctly stated over thirty-five years ago what we explain
today: "[o]missions constitute violations of the [1934] Act only

---

Plaintiffs do not allege, nor do we reach, any claims
under this theory.

Though one could reason that the omission "causes"
some other statement to be false or misleading, we eschew the use
of this word in our analysis because "causation", as a term of
art, is a distinct and separate element of a section 14(a) claim.
<u>See</u> <u>Mills v. Elec. Auto-Lite Co.</u>, 396 U.S. 375, 384-85 (1970).

if they are both material and make other statements false or misleading. Both section 14(a) and Rule 14a-9(a) say as much, and authorities have given effect to their plain meaning." Id. at 245 (citing Gen. Time Corp. v. Talley Indus., 403 F.2d 159, 162 (2d Cir. 1968); Gould v. Am. Hawaiian S.S. Co., 331 F.Supp. 981, 986 (D. Del. 1971); II Louis Loss, Securities Regulation, 917-24 (2d ed. 1961)); see also Perelman v. Pa. Real Estate Inv. Trust, 432 F. Supp. 1298, 1304-05 (D. Del. 1977) (characterizing Ash's holding as "omissions constitute violations of the Act only if they are both material and make other statements false or misleading").

_____

Thus, in order to plead facts to sufficiently allege the prima facie elements of a section 14(a) claim, a plaintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact. This

_____

These requirements are independently embedded in Rule 14a-9, and they are distinct from the heightened pleading requirements the PSLRA imposes, 15 U.S.C. § 78u-4(b)(1). Because we find that plaintiff fails to satisfy the easier-to-satisfy Rule 8 pleading requirement, we do not reach the questions of whether the PSLRA's heightened pleading requirement either applies or disposes of this litigation.

17

premise is consistent with Professor Loss's commentary observing that:

> The basic questions are whether a particular
> statement or omission is false and misleading
> and whether the statement or omission is
> material.  These two questions tend to merge
> . . . [I]t is worth emphasizing that proof of
> (1) a false and misleading statement or
> omission and (2) materiality are two separate
> elements of a case under Rule 14a-9.

Louis Loss, et al., IV Securities Regulation ch. 6(C)(5) & n.394

(4th Ed. 2006, current through 2011 supplement) (citing

Tracinda); see also Thomas Lee Hazen, 2 Law of Securities

Regulation § 7.0[3] & n.29 (6th ed. current through July 2011)

("Accountability under Rule 10b-5 for a material omission arises

only if (1) a statement has been made and [2] the omission makes

the statement materially misleading); 3 id. § 10.3[1] & text

accompanying nn. 8-11 ("A private claim for damages resulting

from a violation of Rule 14a-9 contains many of the elements of a

fraud claim under SEC Rule 10b-5[.]").

Taken together, this jurisprudence and scholarly

commentary teach that section 14(a) and Rule 14a-9 are not some

kind of Strunk & White primer on how best to write a proxy or

registration statement, as plaintiff seems to think.

.  _____

18

Plaintiff's attempt to conflate the materiality and misleading requirements, Pl.'s Resp. Mot. to Dismiss 5-6, is unavailing for all of the reasons rehearsed above. In each opinion plaintiff cites to support his notion of a materiality-misleading merger, the complaining party has satisfactorily met the "misleading" requirement, thereby explaining those opinions' silence on that issue. Defs.'s Reply 5.

Taking all facts alleged in the Complaint as true, and applying this straightforward analysis to plaintiff's section 14(a) claim, it is evident that his Complaint does not adduce "enough facts to raise a reasonable expectation that discovery will reveal evidence" that any statement in the Registration Statement is either (1) affirmatively misleading, or (2) rendered misleading by the omission of a material fact. See Phillips, 515 F.3d at 234; Tracinda Corp., 502 F.3d at 230-33. Though plaintiff incants the section 14(a) and Rule 14a-9 elemental requirements -- as when he pleads that the defendants "filed with the SEC a materially misleading and incomplete Registration Statement . . . . [because the Registration Statement] omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Partnership and omits material facts and information . . . necessary to make the statements contained therein not false and

19

misleading," Pl.'s Compl. ¶39 -- these assertions constitute
nothing more than a "[t]hreadbare recital[] of the elements of a
cause of action, supported by mere conclusory statements."
Iqbal, 129 S.Ct. at 1949-50 (citing Twombly, 550 U.S. at 555
(quoting another source) (affirming district court's dismissal of
the complaint for failure to state a claim upon which relief
could be granted because courts "are not bound to accept as true
a legal conclusion couched as a factual allegation" (internal
quotation marks omitted))).  Just as the Supreme Court would
reject such a complaint under Rule 8, we are obliged to do the
same here.

        A plaintiff's desire to know information that may be
material, as the plaintiff repeatedly seeks in his Complaint, is
not enough to state a claim under Section 14(a) under ordinary
pleading requirements.  He must point to a statement that is
misleading, or is made misleading by operation of a material
omission.  His failure to identify even one specific misleading
statement cannot push his factual allegations over the
speculative-level threshold.  See Twombly, 550 U.S. at 555.

        Plaintiff might want more information to enable him to
make a more informed decision.  But section 14(a) does not

_____

        We note that a contrary holding might very well
frustrate Congress's PSLRA purpose.

                                20

entitle him to "more" information -- it only entitles him to the
information that Rule 14a-9 obliges it to supply.  Consequently,
plaintiff fails to state a cause of action against the defendants
under section 14(a) as Rule 14a-9 implements it.

_ _  _ _ _ _ _ _

Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a),

provides:

> Every person who, directly or indirectly,
> controls any person liable under any
> provision of this chapter or of any rule or
> regulation thereunder shall also be liable
> jointly and severally with and to the same
> extent as such controlled person to any
> person to whom such controlled person is
> liable (including to the Commission in any
> action brought under paragraph (1) or (3) of
> section 78u(d) of this title), unless the
> controlling person acted in good faith and
> did not directly or indirectly induce <u>the act</u>
> <u>or acts constituting the violation or cause</u>
> <u>of action [arising under any provision of the</u>
> <u>1934 Act].</u>

Section 20(a) (emphasis added).

As plaintiff's complaint makes clear, his predicate
"violation or cause of action" arising under the 1934 Act is the
section 14(a) claim implemented by Rule 14a-9.  Pl.'s Compl. ¶
61.  Since we have dismissed plaintiff's section 14(a) claim, and

_____

Given our holding, we do not reach the other
arguments defendants raise in their motion to dismiss pertaining
to the materiality of the omitted material, causation, economic
injury, and the pending Texas federal litigation.

21

no viable "primary violation of the securities laws" remains on which plaintiff can mount a section 20(a) claim, see In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 284 (3d Cir. 2006), his section 20(a) claim must be dismissed as well for failure to satisfy an essential element of the statutory requirement.

BY THE COURT:

\_\_\s\Stewart Dalzell

22