IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD A. HYSONG               :        CIVIL ACTION
                              :
        v.                    :
                              :
ENCORE ENERGY                 :
PARTNERS LP, et al.           :        NO. 11-781

MEMORANDUM

Dalzell, J.[1]                              November 10, 2011

        On September 6, 2011, plaintiff Donald A. Hysong, a

holder of limited partnership units in Encore Energy Partners

L.P. (the "Partnership"), filed a putative class action complaint

alleging violations of sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. §§ 78n(a), t(a),

arising from the defendants' issuance of an allegedly misleading

Form S-4 Registration Statement ("Registration Statement") under

the Securities Act of 1933 that defendants filed with the

Securities and Exchange Commission ("SEC") on September 2, 2011.

Pl.'s Compl. ¶¶ 48-61.

        Plaintiff names ten defendants, including: (1) the

Partnership itself, a publicly traded Delaware master limited

partnership; (2) Vanguard Natural Resources, LLC ("Vanguard"), a

publicly traded Delaware limited liability company; and (3)

---

[1] Sitting by designation pursuant to 28 U.S.C. §
292(b).

Encore Energy Partners GP LLC ("Encore GP"), a Delaware limited liability company and a wholly-owned subsidiary of Vanguard and also the general partner of the Partnership responsible for its management and operation.

In addition to those three entities, plaintiff also names seven individuals: (4) Scott W. Smith, the President, Chief Executive Officer, and member of the Board of Directors of both Encore GP and Vanguard; (5) Richard A. Robert, the Executive Vice-President, Chief Financial Officer, and a Director of both Encore GP and Vanguard; (6) Douglas Pence, the Senior Vice-President of Operations and a Director of Encore GP and Senior Vice-President of Engineering of Vanguard; (7) W. Timothy Hauss, who is the Director of Encore GP and the Operations Manager at Vanguard; (8) David Baggett, a Director of Encore GP and the Chairman of the Audit Committee and a member of the Conflicts Committee of the Encore GP Board; (9) John E. Jackson, a Director of Encore GP; and (10) Martin G. White, a Director of Encore GP and member of the Audit and Conflict Committees of the Encore GP Board. Pl.'s Compl. ¶¶ 7-22.

A few days after plaintiff filed his complaint, he moved for expedited discovery, which we denied on September 16, 2011. On September 29, 2011, plaintiff filed a motion for

preliminary injunction to enjoin a then-not-yet-scheduled unitholder vote.[2]  Plaintiff resurrected his motion for expedited discovery.  We granted his request for expedited discovery and set a briefing and hearing schedule.  On the same day, defendants filed a motion to transfer this case to the Southern District of Texas, Houston Division, and defendants eventually responded to that motion.

On October 5, 2011, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The next day, defendants filed a notice of an automatic stay of discovery under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B).  On October 7, 2011, we stayed the proceedings pending the issuance of an Order granting plaintiff's motion to lift the stay or denying defendants' motion to dismiss.  Plaintiff filed a motion to lift the stay on October 11, 2011, and defendants responded thereto.  We denied the motion to lift the stay on October 18, 2011.  Six days later, plaintiff filed his response in opposition to the motion to dismiss and the defendants filed their reply.

---

[2] Amendment No. 2 to the Form S-4 Registration Statement, filed with the SEC on September 30, 2011, sets November 14, 2011 as the date of the unitholders' special meeting to vote on the Proposed Transaction.

For the reasons set forth below, we will grant defendants' motion to dismiss.

## I.    **Factual Background**

When we consider a motion to dismiss under Rule 12(b)(6), we must "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'" Ordonez v. Yost, 289 F. App'x 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In the course of our inquiry, we may "'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 F. App'x 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal quotation marks omitted).

Plaintiff objects to Vanguard's efforts to acquire all of the outstanding publicly-held Partnership units through a unit-for-unit exchange at a ratio of 0.75 VNR common units per

4

ENP common unit (the "Proposed Transaction"). Pl.'s Compl. ¶¶ 1,

31, 35. On July 11, 2011, the Proposed Transaction was valued at

about $544.8 million. Id. ¶ 1.

Plaintiff alleges that the consideration offered to the

Partnership's public unitholders is "unfair and inadequate

because, among other things, the intrinsic value of [the

Partnership's] common units is materially in excess of the amount

offered for those securities in the Proposed Transaction, given

the Company's financial performance and prospects for future

growth and earnings." Id. ¶ 36. Plaintiff contends that

defendants have imposed "onerous and preclusive deal protection

devices that operate conjunctively to make the Proposed

Transaction a fait'accompli [sic] and ensure that no competing

offers will emerge for the Company." Id. ¶¶ 37-38.

Plaintiff also claims that the defendants:

> filed with the SEC a materially misleading
> and incomplete Registration Statement, which
> serves as the proxy for the imminent
> [Partnership] unitholder meeting at which
> [the Partnership's] unitholders will be asked
> to vote on the Proposed Transaction. The
> Registration Statement recommends that [the
> Partnership] unitholders vote in favor of the
> Proposed Transaction [and it] omits and/or
> misrepresents material information about the
> unfair sale process, the unfair
> consideration, and the true intrinsic value
> of the Partnership and omits material facts

> and information . . . necessary to make the
> statements contained therein not false and
> misleading. . . . [These
> omissions/misrepresentations] render[]
> unitholders unable to cast an informed vote
> on the Proposed Transaction.

Id. ¶ 39.

Plaintiff points to several examples of omitted information which, if disclosed, "would significantly alter the totality of information available for consideration by the average [Partnership] unitholder." Id. ¶ 40. He also claims that the unitholders' reliance upon the inadequate Registration Statement would cause them irreparable harm. Id.

Plaintiff identifies two categories of omitted facts as items of information that are necessary to enable shareholders to evaluate and properly assess the credibility of the various financial analyses described in the Registration Statement: (1) "information regarding the sales process leading up to the Proposed Transaction including the reasonable efforts (or lack thereof) to auction the Partnership prior to entry into the Merger Agreement and what strategic alternatives are available to the Partnership, besides this sale," id. ¶ 41; and (2) underlying methodologies, projections, key inputs and multiples relied upon and observed by Jefferies & Company, Inc.

("Jefferies"), the Partnership's financial advisor, and RBC
Capital Markets, LLC ("RBC"), Vanguard's financial advisor, in
connection with the Proposed Transaction.  Id. ¶¶ 42-43.
Plaintiff specifically cites the lack of disclosure of
"comparative public companies analysis," "comparative
transactions analysis," the "dividend discount model," and the
"discounted cash flow analysis," as actionable omissions.  Id. ¶
42.

Because of their alleged materiality, plaintiff seeks
the disclosure of the fees (and fee terms) that Jefferies stands
to earn for its involvement in the Proposed Transaction, id. ¶
44, in addition to the "unlevered free cash flows or even the key
inputs necessary to reach free cash flows" at the heart of
Jefferies and RBC's 2011-2015 financial projections.  Id. ¶ 45.
Plaintiff asserts that all of this information, taken together,
is "necessary for [the Partnership's] unitholders to cast an
informed vote on the Proposed Transaction."  Id. ¶ 46.

II.  **Analysis**

Plaintiff's complaint asserts two counts against the
defendants: (1) violations of section 14(a) of the 1934 Act,

Pl.'s Compl. ¶¶ 48-52; and (2) violations of section 20(a) of the 1934 Act, id. ¶¶ 53-61.

The Supreme Court has explained that "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Under this standard, a pleading may not simply offer "labels and conclusions," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and there must be "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. Essentially, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted). However, "the defendant bears the burden of showing

that no claim has been presented." <u>Hedges v. United States</u>, 404

F.3d 744, 750 (3d Cir. 2005).

Since a claim arising under section 20(a) is viable

only if the defendants commit "a primary violation of the

securities laws," <u>In re Suprema Specialties, Inc. Sec. Litig.</u>,

438 F.3d 256, 284 (3d Cir. 2006), and the section 14(a) claim is

the "primary violation" alleged in the complaint, Pl.'s Compl. ¶

61, we will first examine the section 14(a) claim.

## A. Claim Arising Under Section 14(a) as Implemented by SEC Rule 14a-9

Defendants assert that "[p]laintiff has failed to

identify a single statement in the preliminary proxy[3] that he

---

[3]    Defendants argue that because plaintiff's complaint
is premised on statements in a <u>preliminary proxy</u> that was not
sent to unitholders, plaintiff cannot allege that defendants have
"solicited" any proxies as is required under Rule 14a-9.  In
support of this proposition, they cite cases from the Western
District of Texas.  Because we decide this case based on other
grounds, we do not reach this question.  Nevertheless, we note an
opinion from our District in which Judge Caleb Wright held,
placing his trust in strong "Hand(s)," that a communication to
shareholders "may constitute a proxy solicitation, even if it
does not contain an express request for a proxy, if it is part of
a continuous plan intended to end in solicitation and to prepare
the way for success." <u>Shamrock Holdings, Inc. v. Polaroid Corp.</u>,
709 F. Supp 1311, 1327 (D. Del. 1989) (internal quotation marks
omitted) (citing <u>SEC v. Okin</u>, 132 F.2d 784, 786 (2d Cir. 1943)
(Learned Hand, J.)); <u>see</u> <u>also</u> 69 Am. Jur. 2d <u>Securities</u>
<u>Regulation</u> § 612 & n.1 (current through Nov. 2011) ("Definition
(continued...)

claims to be misleading.  The Complaint identifies supposedly
omitted information that Plaintiff claims should have been
included, but nowhere does he allege that any of the actual
statements in the proxy would be shown to be false or misleading
by the omitted information, as is required."  Def.'s Mot. to
Dismiss 15 (footnote added).  Defendants cite Ash v. Brunswick
Corp., 405 F. Supp. 234, 245 (D. Del. 1975) (Steel, S.J.), which
holds that "[o]missions constitute violations of [Section 14(a)]
only if they are both material and make other statements false or
misleading."

        Plaintiff's eighteen-page response only obliquely
responds to this argument.  Pl.'s Resp. Mot. to Dismiss 5-6.
Plaintiff asserts that "[c]ourts have consistently held that the
existence of a materially false or misleading statement or
material omission is sufficient, in and of itself, to plead a
cause of action under Section 14(a)."  Id. (emphasis added).
Plaintiff supports his position by supplying a list of citations
without bothering to append explanatory parentheticals to help
explain their relevance.  Id. at 6.  Plaintiff does not cite or
distinguish Ash or any other case that defendants rely on in

---

support of these particular arguments.  Compare Def.'s Mot. To

Dismiss 14-15 with Pl.'s Resp. Mot. to Dismiss 1-18.[4]

Our Court of Appeals has never explicitly adopted Ash's

reasoning, and while we find Ash's formulation of the Rule

helpful, we will elaborate upon the reasoning advanced to date in

its support.  As a result, we start with a rehearsal of the

elements needed to allege a section 14(a) claim that Rule 14a-9

implements.

### 1.  The Standard

Our Court of Appeals has explained that, "[t]o prevail

on a § 14(a) claim[5] [for a violation of Rule 14a-9[6]], a plaintiff

---

[4]  The lone exception is Telltabs, Inc. v. Makor Issues
& Rights, Ltd., 551 U.S. 308 (2007), which plaintiff cites only
to develop the motion to dismiss standard and not the substantive
requirements of a section 14(a) claim.

[5]  Section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a),
provides in pertinent part:

> It shall be unlawful for any person, by the
> use of the mails or by any means or
> instrumentality of interstate commerce or of
> any facility of a national securities
> exchange or otherwise, in contravention of
> such rules and regulations as the Commission
> may prescribe as necessary or appropriate in
> the public interest or for the protection of
> investors, to solicit or to permit the use of
> his name to solicit any proxy or consent or
>                                    (continued...)

must show that (1) a proxy statement contained a material

misrepresentation or omission which (2) caused the plaintiff

injury and (3) that the proxy solicitation itself, rather than

the particular defect in the solicitation materials, was an

essential link in the accomplishment of the transaction."

Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 228 (3d Cir.

---

[5] (...continued)
           authorization in respect of any security
           (other than an exempted security) registered
           pursuant to section 78/ of this title.

       [6]   SEC Rule 14a-9, 17 C.F.R. 240.14a-9(a), provides in
pertinent part:

           No solicitation subject to this regulation
           shall be made by means of any proxy
           statement, form of proxy, notice of meeting
           or other communication, written or oral, [1]
           containing any statement which, at the time
           and in the light of the circumstances under
           which it is made, is false or misleading with
           respect to any material fact, or which [2]
           omits to state any material fact necessary in
           order to make the statements therein not
           false or misleading or [3] [which omits to
           state any material fact] necessary to correct
           any statement in any earlier communication
           with respect to the solicitation of a proxy
           for the same meeting or subject matter which
           has become false or misleading.

Plaintiff here relies only on the first two prongs of Rule 14a-9
and although he rests primarily on prong 2, he also advances
fleeting arguments under prong 1.  Since plaintiff does not
allege any claims arising under prong 3, we will ignore it.

2007) (emphasis added) (quoting <u>Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.</u>, 394 F.3d 126, 144 (3d Cir. 2004)). The Supreme Court has held that a misstatement or "omitted fact is <u>material</u> if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976) (emphasis added).

Rule 14a-9's "materially misleading omission" (or the "materially omitted facts rendering a proxy statement misleading") requirement is comprised of two discrete elements: (1) the omission must be "<u>material</u>", and (2) the omission must render some statement included in the proxy solicitation "<u>false or misleading</u>". <u>See</u> <u>Tracinda Corp.</u>, 502 F.3d at 230-33. Rule 14a-9, by virtue of its plain language, is wholly consistent with this conclusion. The distinction between the "materiality" and "misrepresentation" elements in Rule 14a-9 leads us to conclude that to adequately plead a "materially misleading omission" one must, in accordance with Rule 8(a), allege an omission of a "material fact" that makes other statements in the proxy "false or misleading".

To be sure, an omission by itself cannot be false or misleading, but it can leave unsaid something that is required to

13

prevent another statement from being false or misleading. Logic dictates that before one can determine if "something" is false or misleading, that "something" must be identified. Four analytical pillars lead us to this conclusion: (1) our Court of Appeals's reasoning in <u>Tracinda Corp. v. DaimlerChrysler</u> that teases apart the "materiality" and "misleading" elements in a section 14(a) claim arising under the first prong of Rule 14a-9, (2) <u>Seinfeld v. Becherer</u>'s unexplained and yet-to-be applied reasoning adopted from the Second Circuit, (3) Judge Steel's reasoning in <u>Ash v. Brunswick Corp.</u> that supplies us with an easy-to-apply rule, and (4) scholarly commentary on the question.

### a.   **Tracinda Corp. v. DaimlerChrysler**

Our Court of Appeals has often expounded on the contours of "materially false or misleading statements" (or "material, affirmative statements rendering a proxy solicitation false or misleading"). <u>Tracinda Corp. v. DaimlerChrysler AG</u>, 502 F.3d 212 (3d Cir. 2007), is but one such instance. The Court analyzed prong one of Rule 14a-9(a) pertaining to an affirmatively offered, misleading statement, and reviewed the district court's entry of judgment in favor of the defendant on plaintiff's section 14(a) claim. After a thirteen-day bench

trial, the district court, sitting as finder of fact, held that
the defendant did not make any false or misleading written
statements under Rule 14a-9 when it used the term "merger of
equals" in a solicitation. Tracinda Corp., 502 F.3d at 229. The
district court held that the failure to prove any false or
misleading statement was, by itself, fatal to plaintiff's section
14(a) claim.[7] Id.

Our Court of Appeals affirmed the judgment in favor of
the defendant, thus disposing of plaintiff's section 14(a) claim
and holding that the district court's "no misrepresentation"
finding of fact was "not clearly erroneous." Id. at 232. The
Court noted that it "need not reach . . . the proper legal
standards for determining materiality and causation[,]" because
the absence of a misrepresentation was sufficiently fatal to the
section 14 claim. Id. at 230.

Thus, Tracinda's narrowest holding teaches that, in the
context of a section 14(a) claim arising under the first prong of
Rule 14a-9, our Court of Appeals expects plaintiffs alleging a
claim to (1) point to a specific statement in the proxy
solicitation that can be identified as false or misleading, and

---

[7]    The district court nevertheless advanced a
secondary basis for its decision along materiality grounds.

(2) tease apart the "materiality" and "misleading" requirements

of the Rule because each is a necessary condition to a claim

arising under section 14 as implemented by Rule 14a-9.  See id.

at 230-33.

Thus, our Court of Appeals's broader holding in

Tracinda informs the independent significance of the

"materiality" and "misleading" inquiries under all three of Rule

14a-9's prongs.  Tracinda in this way helps us to construe the

meaning of "materially misleading omissions" arising under prong

two of Rule 14a-9.

### b.   **Seinfeld v. Becherer**

Our Court of Appeals has also noted that the "'omission

of information from a proxy statement will violate [§ 14(a) and

Rule 14a-9] if either [i] the SEC regulations specifically

require disclosure of the omitted information in a proxy

statement,[8] or [ii] the omission makes other statements in the

proxy statement materially false or misleading.'"[9]  Seinfeld v.

---

[8] Plaintiffs do not allege, nor do we reach, any claims under this theory.

[9] Though one could reason that the omission "causes" some other statement to be false or misleading, we eschew the use of this word in our analysis because "causation", as a term of

(continued...)

16

<u>Becherer</u>, 461 F.3d 365, 369 (3d Cir. 2006) (alterations in original except for addition of Roman numerals) (emphasis added) (quoting <u>Resnik v. Swartz</u>, 303 F.3d 147, 151 (2d Cir. 2002)); <u>see also</u> <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083, 1097 (1991) ("liability under § 14(a) must rest not only on [1] deceptiveness but [2] materiality as well").  Our Court of Appeals has not yet had occasion to apply or explain the second prong which requires the omission to "make" other "material statements" in the proxy "false or misleading".

      c.    **<u>Ash v. Brunswick Corp.</u>:**
            **<u>Referenced Authority and Progeny</u>**

Although the meaning of Rule 14a-9's "materially misleading omissions" has not received widespread attention in the 1934 Act jurisprudence, Judge Steel in <u>Ash</u>, 405 F. Supp. at 245, succinctly stated over thirty-five years ago what we explain today: "[o]missions constitute violations of the [1934] Act only if they are both material and make other statements false or misleading.  Both section 14(a) and Rule 14a-9(a) say as much, and authorities have given effect to their plain meaning."  <u>Id.</u>

---

9 (...continued)
art, is a distinct and separate element of a section 14(a) claim. <u>See</u> <u>Mills v. Elec. Auto-Lite Co.</u>, 396 U.S. 375, 384-85 (1970).

at 245 (citing <u>Gen. Time Corp. v. Talley Indus.</u>, 403 F.2d 159,

162 (2d Cir. 1968); <u>Gould v. Am. Hawaiian S.S. Co.</u>, 331 F.Supp.

981, 986 (D. Del. 1971); II Louis Loss, <u>Securities Regulation</u>,

917-24 (2d ed. 1961)); <u>see also</u> <u>Perelman v. Pa. Real Estate Inv.</u>

<u>Trust</u>, 432 F. Supp. 1298, 1304-05 (D. Del. 1977) (characterizing

<u>Ash</u>'s holding as "omissions constitute violations of the Act only

if they are both material and make other statements false or

misleading").

### d.    **Scholarly Commentary**

Thus, in order to plead facts to sufficiently allege

the <u>prima facie</u> elements of a section 14(a) claim, a plaintiff

must identify a precise statement in the proxy that is either

affirmatively misleading in and of itself, or is rendered

misleading by operation of a materially omitted fact.[10]  This

premise is consistent with Professor Loss's commentary observing

that:

---

[10]  These requirements are independently embedded in
Rule 14a-9, and they are distinct from the heightened pleading
requirements the PSLRA imposes, 15 U.S.C. § 78u-4(b)(1).  Because
we find that plaintiff fails to satisfy the easier-to-satisfy
Rule 8 pleading requirement, we do not reach the questions of
whether the PSLRA's heightened pleading requirement either
applies or disposes of this litigation.

> The basic questions are whether a particular
> statement or omission is false and misleading
> and whether the statement or omission is
> material.  These two questions tend to merge
> . . . [I]t is worth emphasizing that proof of
> (1) a false and misleading statement or
> omission and (2) materiality are two separate
> elements of a case under Rule 14a-9.

Louis Loss, et al., IV <u>Securities Regulation</u> ch. 6(C)(5) & n.394

(4th Ed. 2006, current through 2011 supplement) (citing

<u>Tracinda</u>); <u>see also</u> Thomas Lee Hazen, 2 <u>Law of Securities</u>

<u>Regulation</u> § 7.0[3] & n.29 (6th ed. current through July 2011)

("Accountability under Rule 10b-5 for a material omission arises

only if (1) a statement has been made and [2] the omission makes

the statement materially misleading); 3 <u>id.</u> § 10.3[1] & text

accompanying nn. 8-11 ("A private claim for damages resulting

from a violation of Rule 14a-9 contains many of the elements of a

fraud claim under SEC Rule 10b-5[.]").

Taken together, this jurisprudence and scholarly

commentary teach that section 14(a) and Rule 14a-9 are not some

kind of Strunk & White primer on how best to write a proxy or

registration statement, as plaintiff seems to think.

### 2.   <u>Application</u>

Plaintiff's attempt to conflate the materiality and

misleading requirements, Pl.'s Resp. Mot. to Dismiss 5-6, is

unavailing for all of the reasons rehearsed above.  In each

opinion plaintiff cites to support his notion of a materiality-

misleading merger, the complaining party has satisfactorily met

the "misleading" requirement, thereby explaining those opinions'

silence on that issue.  Defs.'s Reply 5.

Taking all facts alleged in the Complaint as true, and

applying this straightforward analysis to plaintiff's section

14(a) claim, it is evident that his Complaint does not adduce

"enough facts to raise a reasonable expectation that discovery

will reveal evidence" that any statement in the Registration

Statement is either (1) affirmatively misleading, or (2) rendered

misleading by the omission of a material fact.  See Phillips, 515

F.3d at 234; Tracinda Corp., 502 F.3d at 230-33.  Though

plaintiff incants the section 14(a) and Rule 14a-9 elemental

requirements -- as when he pleads that the defendants "filed with

the SEC a materially misleading and incomplete Registration

Statement . . . . [because the Registration Statement] omits

and/or misrepresents material information about the unfair sale

process, the unfair consideration, and the true intrinsic value

of the Partnership and omits material facts and information . . .

necessary to make the statements contained therein not false and

misleading," Pl.'s Compl. ¶39 -- these assertions constitute

nothing more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949-50 (citing Twombly, 550 U.S. at 555 (quoting another source) (affirming district court's dismissal of the complaint for failure to state a claim upon which relief could be granted because courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted))).  Just as the Supreme Court would reject such a complaint under Rule 8, we are obliged to do the same here.

A plaintiff's desire to know information that may be material, as the plaintiff repeatedly seeks in his Complaint, is not enough to state a claim under Section 14(a) under ordinary pleading requirements.[11]  He must point to a statement that is misleading, or is made misleading by operation of a material omission.  His failure to identify even one specific misleading statement cannot push his factual allegations over the speculative-level threshold.  See Twombly, 550 U.S. at 555.

Plaintiff might want more information to enable him to make a more informed decision.  But section 14(a) does not

---

[11] We note that a contrary holding might very well frustrate Congress's PSLRA purpose.

entitle him to "more" information -- it only entitles him to the

information that Rule 14a-9 obliges it to supply.  Consequently,

plaintiff fails to state a cause of action against the defendants

under section 14(a) as Rule 14a-9 implements it.[12]

### B.   Claim Arising Under Section 20(a)

Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a),

provides:

> Every person who, directly or indirectly,
> controls any person liable under any
> provision of this chapter or of any rule or
> regulation thereunder shall also be liable
> jointly and severally with and to the same
> extent as such controlled person to any
> person to whom such controlled person is
> liable (including to the Commission in any
> action brought under paragraph (1) or (3) of
> section 78u(d) of this title), unless the
> controlling person acted in good faith and
> did not directly or indirectly induce <u>the act</u>
> <u>or acts constituting the violation or cause</u>
> <u>of action [arising under any provision of the</u>
> <u>1934 Act].</u>

Section 20(a) (emphasis added).

As plaintiff's complaint makes clear, his predicate

"violation or cause of action" arising under the 1934 Act is the

---

[12] Given our holding, we do not reach the other
arguments defendants raise in their motion to dismiss pertaining
to the materiality of the omitted material, causation, economic
injury, and the pending Texas federal litigation.

section 14(a) claim implemented by Rule 14a-9.  Pl.'s Compl. ¶

61.  Since we have dismissed plaintiff's section 14(a) claim, and

no viable "primary violation of the securities laws" remains on

which plaintiff can mount a section 20(a) claim, <u>see</u> <u>In re</u>

<u>Suprema Specialties, Inc. Sec. Litig.</u>, 438 F.3d 256, 284 (3d Cir.

2006), his section 20(a) claim must be dismissed as well for

failure to satisfy an essential element of the statutory

requirement.


                    BY THE COURT:

                    __\s\Stewart Dalzell